IN THE

# SUPREME COURT OF JUDICATURE

OF THE

## STATE OF NEW JERSEY,

### AT NOVEMBER TERM, 1862.

~~~~~~~~~~~~~~

DENNIS FARREL v. JAMES COLWELL AND MULFORD CAVA-
LIER.

1. If a constable seize goods as the property of A., upon execution against him, which were in fact the property of A. and B., and sell and deliver the entire property, B. may maintain trespass.

2. If the title of one partner to a moiety of partnership chattels be bad as against an execution creditor, and the title of the firm be good as to the other moiety, both partners may maintain a joint action in trespass against the officer seizing and selling the entire property.

3. If B. and C. sue in trespass for taking goods in which C. had no property, and B. owned one-half, and no notice is given of a misjoinder pursuant to the statute (*Nix. Dig.* 665, § 129,) B. is entitled to recover damages to half the value of the property.

4. If no question was made at the trial in regard to the amount of damages in case C. was not proved to be an owner, and the court was not asked to charge on the point, and it appears that damages to the full value were given, the judgment will not be reversed.

5. Damages for taking a horse may be what he was worth in the business in which he was employed by the plaintiffs.

6. An innocent purchaser of property, who has bought it in a fair *bona fide* manner at a fair price, cannot be deprived of it because the object of the seller was to defraud his creditors.—By ELMER, J.

———

Error to Hudson Circuit Court.

This was an action of trespass, brought by Colwell and Cavalier, the plaintiffs below, against Farrel, for selling and delivering possession of a horse and harness claimed by them. The defendant below, Farrel, justified as constable under a judgment and execution against one Peter Cavalier. The horse and harness had formerly belonged to Peter Cavalier, and constituted a part of his stock in trade; he sold out this stock in trade, one half to Mulford Cavalier, his son, and the other half to Colwell, each buying separately, but carrying on their business as partners, and using the horse and harness as partnership property.

For the plaintiff in error, *S. B. Ransom.*

For the defendant in error, *C. H. Winfield.*

The opinion of the court was delivered by the

CHIEF JUSTICE. Farrel was a constable, and had an execution in favor of Randall and Morrell against one Peter Cavalier, upon which he sold and delivered possession of a horse and harness claimed by the plaintiffs, Colwell and Calvalier, as purchasers from Peter Cavalier. The latter had been engaged in the kindling wood business, and the horse and harness was a part of the stock in trade. He sold out this stock, one half to Mulford Cavalier, his son, and the other to Colwell; each bought separately, and they carried on the business ostensibly as partners. The plaintiffs in execution, creditors of Peter Cavalier, insisted, on the trial, that the sale of the goods to Mulford Cavalier was void under the statute of frauds, as intended to defeat creditors, and also that it was a mere pretence that Peter Cavalier was still the owner of the property. It was admitted that Colwell was a *bona fide* purchaser, and had good title to a moiety of the property.

Several reasons have been assigned for the reversal of the judgment, some of which it is not necessary to notice to determine the case.

Among other things, the court charged the jury that if they should find that the sale of the half interest to Mulford was fraudulent in fact as to creditors, and that Peter's interest in the property was liable to execution against his father, yet if it appeared by the evidence that the defendant levied upon and took the entire interest in the horse and harness, and sold and delivered them as entireties to the purchaser, he was a trespasser, because he violated the lawful joint possession of both the plaintiffs in the property, and unlawfully deprived Colwell of his undivided interest in the chattels, and his possession thereof.

This charge is said to be erroneous, because upon an execution against one partner the officer may seize the partnership property, and sell the partner's interest in it to satisfy his undivided debt, and deliver possession to the purchaser without subjecting himself to the liabilities of a trespasser.

Without discussing this vexed question, and attempting to define to what extent an officer may go in executing a *fi. fa.* upon partnership property to satisfy the debt of a partner, it is sufficient to say that this case does not come within the reach of any of the decisions upon this point exempting the officer from liability.

In this case the officer sold the property as the sole property of Peter Cavalier, and delivered possession of it as such. The sale was not only in defiance of the right of Mulford Cavalier but of Colwell. There was a conversion of the *whole* chattels, not of the partner's interest. Having sold the whole, and professed to pass title to the whole to the purchaser, the officer is estopped in this suit from saying that he did not sell Colwell's interest. It would never do to permit an officer to sell the interest of all the partners, not as such, but ousting that interest by a sale of the chattels as the property of a third person, and when sued by those whose rights he had destroyed as far as he had the power, to turn them out of court by saying, I had a right to sell the rights of one of you to satisfy his individual debt.

It is no answer to say that the officer could sell only the

right of the defendant in execution; that he could not change the property of the others. That is so in every trespass. The property is not changed by the trespass, unless the owner elects to consider it so changed, and to bring his action for damages instead of for the thing itself.

Nor is the objection, that in the contingency contemplated by the charge, of Mulford Cavalier's title being bad as against the execution, so far as it depended on the bill of sale, that the action could not be maintained by both against the officer, a sound objection.

The case was put to the jury without objection, upon the ground that there was a partnership between Mulford Cavalier and Colwell; if that was so, although the title of the firm might have been bad to the half of the horse and harness conveyed by the bill of sale to Mulford Cavalier, yet it was conceded to be good to the other half by reason of the admitted *bona fides* of Colwell's purchase. The plaintiffs could maintain a joint action, because they held a joint interest, in any event, in the moiety of the horse and harness, even if the bill of sale of the other moiety was fraudulent as to creditors.

The question should not have been presented as a bar to the joint action of the plaintiffs, but as affecting the damages to be recovered in the contemplated contingency of the *mala fides* of the sale to Mulford Cavalier. In that event, if Colwell had notice of the fraud, Mulford Cavalier's moiety never passed to the firm, and they could not recover the whole value of the chattels sold; nor could they recover, if Colwell was without notice of the fraud, more than the value of Mulford Cavalier's interest as partner in the chattels.

The question, what the proper measure of damages would be in that view of the case, does not seem to have been distinctly presented upon the trial. The jury were instructed, in the event of no fraud being made out, to render a verdict for the whole value of the horse and harness, at the time they were taken, to the owners in their business; but although they were instructed that if the fraud alleged were

made out, yet the plaintiffs might recover because of the unlawful disturbance of the plaintiffs' joint possession, and the deprivation by Colwell of his undivided interest in the property; yet they were not told to give in that case only the value of Colwell's interest. The only exception touching the measure of damages, was to that part of the charge in which the court held as to damages, what has already been stated. The omission of the court to charge further upon the measure of damages was manifestly an inadvertence, which would have promptly been corrected if brought to its notice at the time. The defendant neglected to do so. Not having made the point at the trial, he cannot have the advantage of it here. The rule upon this subject has long been well understood and settled. If the verdict was no larger in consequence of this omission of the court, the remedy, if anywhere, was in the court below on application for a new trial.

It was insisted, as a reason for reversal, that the measure of damages, as propounded to the jury, was incorrect; that it should not have been the value of the horse and harness to the owners in their business, but their absolute market value.

This was not a case for vindictive damages; the defendant was an officer serving an execution for a plaintiff who, so far as appears, was honestly asserting what he believed to be his rights; but notwithstanding, the defendants were entitled to be indemnified by the verdict. They were entitled to have the value of the horse as a horse to be used in their business, and fitted for that use. Perhaps he would not have been worth anything as a fast trotter or as a gentleman's carriage horse, because not adapted to the work; but that would not depreciate his value as a cart horse, for which purpose he was to be used. The language of the charge may not have been as explicit as it might have been, yet if it does not assert any illegal proposition, as applied to the case, we cannot reverse the judgment; if the defendant desired it to be more full and explicit, he should have required

an additional charge upon the point more specific in its character.

I perceive no error in the refusal of the court to charge that the sale to Mulford Cavalier was fraudulent in law. Nothing in the case called for such a charge. The terms of the sale were lawful, if not fraudulent in fact; whether they were so or not was a matter of fact to be determined by the jury.

The court did not submit to the jury the question, whether a partership existed between Mulford Cavalier and Colwell, and charged the jury that there was such partnership; there was no exception to the charge upon this point, and for that reason no error can be assigned for that cause.

ELMER, J. I concur in the opinion of the Chief Justice. It may be proper, also, to notice two other questions discussed on this argument. The judge charged the jury that "It is necessary, for setting aside a sale as fraudulent in law against creditors, that both vendor and vendee should concur and unite in the collusive device and contrivance; and whether they did so in this case is a question of fact for you to settle upon a view of the whole transaction, there being no substantial evidence to that effect, as in the case of Arvis." This was objected to as erroneous.

That an innocent purchaser of property, who has bought it in a fair and *bona fide* manner for a fair price, cannot be deprived of it because the object of the sale was to defraud his creditors, is clear. The statute of frauds expressly so enacts. (*Nix. Dig.* 329, § 6.)* Taking into view other parts of the charge, I think this was its purport, and it must have been so understood.

If it appeared that by the expression, "there being no substantial evidence" of a collusive device and contrivance, the jury must have understood that there was no evidence in the case which would justify them in finding the sale of half the property to one of the plaintiffs to be fraudulent. I think it would have been erroneous, for there certainly was

* *Rev., p. 447, § 15.*

evidence which might have convinced the jury there was fraud in fact. But this could not have been so understood. In a previous part of the charge, the jury were told, " If the object of the vendor in making the sale was to defeat the claims of any creditors, and the object of purchasing was to enable the father of one of them to accomplish such purpose, then it was a sale to hinder, delay, and defraud creditors, and comes within the decision of the case of *Owen* v. *Arvis*, cited by the defendants' counsel." In disposing of the facts with reference to this aspect of the case, you should bear in mind that Colwell heretofore had been a stranger to the vendor and his son, and that he paid cash for his interest, and that the other plaintiff has testified that when he purchased he did not know whether his father was in debt.

There can be no doubt, I think, that the question of fraud was submitted to the jury, and that they understood the phrase, " no substantial evidence to that effect as in the case of Arvis," to mean, what was evidently intended, that the transaction was not in law such a fraud as made the sale void, however innocent the parties may have been, as was held to be the case in *Owen* v. *Arvis*, 2 *Dutcher* 23.

The damages assessed would seem to have been for the whole value of the property taken, and upon the supposition that the sale of one-half to Mulford Cavalier was fraudulent and void. I think this would have been erroneous. In that case the other plaintiff, had he sued alone, and there was no plea in abatement, could only have recovered one-half the value. *Bloxam* v. *Hubbard*, 5 *East's R.* 407 ; *Addison* v. *Overend*, 6 *Term R.* 766 ; *Sedgworth* v. *Overend*, 7 *Term R.* 279.

By the statute (*Nix. Dig.* 665, § 129,)* it is provided that the misjoinder of a plaintiff shall not be objected to, unless the defendant give previous written notice of such objection. This provision, I suppose, entitled the plaintiffs to such a verdict and judgment as either of them might have had if he had sued separately.

But no question as to what damages should be given if

---

* *Rev.*, p. 853 § 37.

the sale to one was found to be fraudulent appears to have been. made at the trial. The judge was not asked to charge as to this point, nor is there any error assigned upon it.

VREDENBURGH, J., (dissenting.) This was an action of trespass, brought by Colwell and Cavalier against Farrell for taking and selling a horse and harness. The defendant below, Farrel, justified as constable under a judgment and execution against one Peter Cavalier. The principal question was whether a sale of the articles by Peter Cavalier to the plaintiffs was fraudulent as against creditors.

It appears by the case, that Peter Cavalier became indebted to Randall and Morrell a short time prior to the 19th March, 1860; they obtained judgment against him the 11th July, 1860. Peter Cavalier sold the property, together with a large amount of other property, to the plaintiffs below. The question turned upon the *bona fides* of the sale by Peter Cavalier as regards creditors. The court, among other things, charged the jury that it is necessary, for setting aside a sale as fraudulent in law that both vendor and vendee should concur and unite in the collusive device and contrivance; and whether they did so in this case, is a question of fact for you to settle upon a view of the whole transaction, there being no substantial evidence to that effect, as in the case of Arvis.

It appears to me that this amounts in legal effect to saying to the jury that there was no evidence of fraud.

Now it appears, by the evidence, that Peter Cavalier had been, and was, on the 19th March, 1860, carrying on, in Jersey City, the business of making and selling kindling wood and charcoal, and had three horses and sets of harness, three wagons, one steam engine, boiler, and fixtures, one kindling wood machine, a lot of pine wood, lot of cut wood, lot of tools, one sawing machine, and divers other property, of the value of $2000, and being in debt, on the 19th March, 1860, by two separate bills of sale, for the nominal sum of $1545.52, conveyed one half of all his property to each of the plaintiffs; that Colwell paid his one half in money; that Mul-

ford Cavalier was the son of Peter Cavalier, had just come of age, had no money to buy with, and gave his note to his father for the consideration ($772.76) of the bill of sale to him payable at a future time; that both bills of sale were given at the same time, and that Colwell stood by and saw young Cavalier give his note for the whole purchase money. It appears to me that this is some evidence of fraud on the part of both plaintiffs which should have gone to the jury.

I am of opinion that the judgment should be reversed.

Judgment affirmed.